1   KAMALA D. HARRIS
    Attorney General of California
2   JOHN P. DEVINE
    Deputy Attorney General
3   State Bar No. 170773
      455 Golden Gate Avenue, Suite 11000
4     San Francisco, CA  94102-7004
      Telephone:  (415) 703-5522
5     Fax:  (415) 703-5480
      E-mail:  John.Devine@doj.ca.gov
6   *Attorneys for Defendants State of California, acting*
    *by and through the Department of Alcoholic*
7   *Beverage Control, and Michelle Ott*

8

9                    IN THE UNITED STATES DISTRICT COURT

10               FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12

| | |
|---|---|
| **MIKE QUAN, et al.,** | **Case No.  CV-10-1835 MEJ** |
| Plaintiffs, | **DEFENDANTS DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL AND INVESTIGATOR MICHELLE OTT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| **SAN FRANCISCO POLICE DEPARTMENT, et al.,,** | |
| Defendants. | **Date:       May 19, 2011**<br>**Time:       10:00 a.m.**<br>**Dept:       B, 15th Floor**<br>**Judge:     Honorable Maria-Elena James** |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities...................................................................2

    I.     Preliminary Statement........................................................................2

    II.    Statement of Facts .............................................................................4

          A.    Alcoholic Beverage Control Investigator Michelle Ott begins work with San Francisco Police Officer Larry Bertrand to reduce crime in San Francisco's South of Market Area.....................................................4

          B.    A stabbing incident occurring at The Room bar located at Sixth Street attracts the attention of law enforcement entities and officers .........5

          C.    Undercover investigation at The Room reveals that alcoholic beverages are being sold without proper licensing, in violation of California law ...................................................................................6

          D.    Bartender Javier Magallon refuses the lawful request for identification, and then attempts to slip his handcuffs with partial success ...............................................................................................7

          E.    Law enforcement officers continue their investigation of The Room's basement .............................................................................8

          F.    The basement portion of the room was not licensed by ABC to sell alcohol before November 2010....................................................9

Argument .................................................................................................................10

    I.     Legal standards under Federal Rule of Civil Procedure 56. ...............10

    II.    Background of the Alcoholic Beverage Control laws for the State of California, which demonstrate that Playbar Inc. was never licensed to sell alcohol in the basement portion of The Room .......................................11

    III.   Plaintiff Quan has no standing to file an action based on any action of the ABC, and his failure to exhaust administrative remedies precludes this action.....................................................................................................13

    IV.   The State of California is entitled to summary judgment as to Plaintiff Quan's second claim for relief.............................................................14

          A.    No statute authorizes an action for a constitutional, or other violation, based on denial, suspension or revocation of a liquor license ............................................................................................14

          B.    Defendants are entitled to immunity for their actions pursuant to the licensing immunities of California Government Code sections 818.4 and 821.2.................................................................................16

          C.    The State is immune pursuant to Government Code section 821.6..........17

    V.    Plaintiff Javier Magallon was lawfully detained and arrested, so Defendants are entitled to summary judgment for his first claim for relief...........19

          A.    Investigator Ott lawfully and justifiably detained Plaintiff Magallon ......19

          B.    Plaintiff Magallon was arrested when he attempted to escape from his handcuffs ...................................................................................21

    VI.   Plaintiffs civil RICO claims are entirely unsupported.........................23

i

# TABLE OF CONTENTS
(continued)

**Page**

Conclusion.................................................................................................................. 24

ii

# TABLE OF AUTHORITIES

**Page**

CASES

*Adams v. Williams*
    407 U.S. 143 (1972)................................................................... 21

*Amylou R. v. County of Riverside*
    28 Cal.App.4th 1205 ............................................................... 17

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)................................................................. 10

*Arpin v. Santa Clara Valley Transp. Agency*
    261 F.3d 912 (9th Cir. 2001) .................................................. 22

*Asgari v. City of Los Angeles*
    15 Cal.4th 744. (1997) ............................................................ 21

*Bradford v. State of California*
    36 Cal.App.3d 16 (1974)................................................. 15, 17

*Camille v. ABC Appeals Board*
    99 Cal.App.4th 1094 (2002).................................................. 11

*City of Vernon v. Southern California Edison Co.*
    955 F.2d 1361 (9th Cir. 1992) ............................................... 10

*Collins v. City and County of San Francisco*
    50 Cal.App.3d 671 (1975)...................................................... 21

*Colome v. State Athletic Commission*
    47 Cal.App.4th 1444 (1996)............................................ 16, 17

*Costa Theatre, Inc. v. City of Concord*
    511 F. Supp. 87 (N.D. Cal. 1980) ...................................... 3, 12

*Coverstone v. Davies*
    38 Cal.2d 315 (1952) ............................................................. 23

*Edison v. City of Anaheim*
    63 Cal. App. 4th 1269 (1998).............................................. 10

*Ellis v. Cassidy*
    625 F.2d 227 (9th Cir. 1980) ........................................... 23, 24

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Fiscus v. Department of Alcoholic Beverage Control*

4

    155 Cal.App.2d 234 (1957).................................................................................. 13

5

*Fisherman Wharf Bay Cruz Corp. v. Superior Court*

    114 Cal.App.4th 309 (2004).............................................................................. 15

6

*Haggis v. City of Los Angeles*

7

    22 Cal.4th 490 (2000) ...................................................................................... 14

8

*Hamilton v. City of San Diego*

    217 Cal.App.3d 838 (1990) .............................................................................. 21

9

*Hiibel v. Sixth Judicial Dist. Court*

10

    542 U.S. 177 (2004).......................................................................................... 20

11

*Hoff v. Vacaville Unified*

12

    19 Cal.4th 925 (1998) ...................................................................................... 15

13

*Javor v. Taggart*

    98 Cal.App.4th ........................................................................................... 17, 18

14

*Johnson v. Loma Linda*

15

    24 Cal.4th 61 (2000) ........................................................................................ 13

16

*Kaplan v. Labarbera*

17

    58 Cal.App.4th 175 (1997)................................................................................ 17

18

*Lindahl v. Air France*

19

    930 F.2d 1434 (9th Cir. 1991) .......................................................................... 10

*MacDonald v. State of California*

20

    230 Cal.App.3d 319 (1991) .............................................................................. 16

21

*Martin v. ABC (Chaney)*

22

    52 Cal.2d 259 (1959) ....................................................................................... 11

23

*Maryland v. Wilson*

    519 U.S. 408 (1997).......................................................................................... 20

24

*Max Factor v. Kunsman*

25

    5 Cal.2d 446 (1936) ......................................................................................... 15

26

*Meyers v. ABC Appeals Board*

27

    238 Cal.2d 869 (1965) ..................................................................................... 11

28

1

### TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

*Miller v. Dept. of ABC*

4
    160 Cal.App.2d 658 (1958).................................................................. 13

*Miranda v. Ponce Federal Bank*

5
    948 F.3d 41 (1st Cir. 1991) ................................................................. 24

6

*Neely v. St. Paul Fire and Marine Ins. Co.*

7
    584 F.2d 341 (9th Cir. 1978)............................................................... 10

8

*People v. Castaneda*
    35 Cal.App.4th 1222 (1995)................................................................ 19

9

*Reynolds v. County of San Diego*

10
    84 F.3d 1162 (9th Cir. 1996).............................................................. 10

11
*Sanchez v. City of Santa Ana*

12
    936 F.2d 1027 (9th Cir. 1990)............................................................. 23

13
*Santa Ana Food Market v. ABC Appeals Board*
    76 Cal.4th 570 (1999).......................................................................... 11

14

*Singleton v. Perry*

15
    45 Cal.2d 489 (1955).......................................................................... 21

16
*United States v. Acosta-Colon*

17
    157 F.3d 9 (9th Cir. 1998)................................................................... 20

18
*United States v. Bautista*
    684 F.2d 1286 (9th Cir. 1982).............................................................. 21

19

*United States v. Diebold, Inc.*

20
    369 U.S. 654 (1962)............................................................................ 10

21
*United States v. Griffin*

22
    7 F.3d 1512 (10th Cir. 1993)............................................................... 19

23
*United States v. Mendenhall*
    446 U.S. 544 (1980)............................................................................ 19

24

*United States v. Moses*

25
    796 F.2d 281 (9th Cir. 1986)............................................................... 22

26
*Vieux v. East Bay Regional Park Dist.*

27
    906 F.2d 1330 (9th Cir.1990).............................................................. 23

28

v

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Walker v. Munro*

4
        178 Cal.App.2d 67 (1960) ............................................................................ 13

*White v. Martin*

5
        215 Cal.App.2d 641 (1963) ......................................................................... 22

6

*Yu v. ABC Appeals Board*

7
        3 Cal.App.4th 286 (1992) ............................................................................ 11

8     **STATUTES**

9     18 U.S.C. § 1962(c) ........................................................................................... 24

10    Cal. Bus. & Prof. Code

11        §§ 23300-23301 ..................................................................................... 9, 12, 19

12        § 23355 ........................................................................................................ 9, 12

13        § 23090 ............................................................................................................ 13

14        § 23958 ............................................................................................... 12, 14, 15

15        § 24011 ............................................................................................................ 13

16        § 24012 ............................................................................................................ 13

17        § 24016 ............................................................................................................ 13

18

19    Cal. Govt. Code

20        § 815 et seq. .................................................................................................... 15

21        § 815.2(a) .................................................................................................. 15, 17

22        § 815.2(b) ........................................................................................................ 17

23        § 815.6 ............................................................................................................ 14

24        § 818.4 .................................................................................................. 3, 15, 16, 17

25        §§ 818.4, 821.2, and 821.6 ......................................................... 15, 17, 18, 19

26

27    Govt. Code § 820 et seq. ................................................................................... 15

28

Type Footer Info Here 2 («Matter Primary Court Case #»)

# TABLE OF AUTHORITIES
## (continued)

Page

Cal. Penal Code §836.................................................................................................... 2

Cal. Penal Code § 148(a)(1)........................................................................................ 20

Cal. Penal Code § 347(b) ............................................................................................. 9

Cal. Penal Code § 835a .............................................................................................. 10

Cal. Penal Code § 847(b)(1)................................................................................... 4, 22


**CONSTITUTIONAL PROVISIONS**

California Constitution........................................................................................ 11, 16

U.S. Constitution ...........................................................................................20,21,22

**COURT RULES**

Fed. R. Civ. P. 56(c) ................................................................................................. 10

PLEASE TAKE NOTICE that on  May 19, 2011 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom B, 15th Floor, of the above entitled court, located at the Federal Building, 450 Golden Gate Avenue, San Francisco, California, defendants California Department of Alcoholic Beverage Control and ABC Investigator Michelle Ott will move, and hereby do move, this Court pursuant to Federal Rules of Civil Procedure, Rule 56(c), for an order granting summary judgment in their favor as to all the claims for relief alleged in plaintiffs' complaint on the grounds that no genuine or triable issues of material fact exist.  More specifically, an order granting summary judgment is appropriate for the following reasons:

1.      Defendants did not falsely or wrongfully arrest plaintiff Magallon;

2.      Defendants are entitled to immunity for their detention and arrest of plaintiff Magallon;

3.      Neither Plaintiff Quan nor Playbar Inc. ever obtained a license to sell alcohol for the basement premises of The Room before the incident, which was required by the Constitution and State laws of California;

4.      Defendants are entitled to qualified immunity to immunity for their actions because of the provisions of California Government Code sections 818.4, 821.2, and 821,6; and

5.      Plaintiffs cannot meet the heightened standard necessary to establish a civil violation of the RICO statute.

Consequently, defendants California Department of Alcoholic Beverage Control and ABC Investigator Michelle Ott pray that the motion for summary judgment be granted.

The motion for summary judgment will be based on this notice of motion and this motion for summary judgment, the memorandum of points and authorities filed in support of the motion for summary judgment, the declarations filed in support of this motion, the pleadings and papers on file, and such oral and documentary evidence as may be presented at the time of the hearing.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY STATEMENT**

Plaintiff Mike Quan is the president of Playbar, Inc., which owns and operates a bar called "The Room" in San Francisco. Quan desired to expand The Room into the basement portion of the premises. While Quan had discussions with individuals from the California Department of Alcohol Beverage Control in 2008 about the expansion, he did not obtain a license to sell alcohol in the basement. Indeed, on February 3, 2009, Andrew Omahen of the California Department of Alcohol Beverage Control sent notice to Quan at The Room informing him that several documents were still needed to expand his ABC license to include the basement portion of the premises. Between February 3, 2009 and June 19, 2009, no license was ever issued for the basement portion of The Room. No license ever existed to sell alcoholic beverages in the basement portion of The Room until November 2010.

In the weeks before June 19, 2009, Investigator Ott consulted with Mr. Omahen, who informed her that the basement portion of The Room was not licensed. The attention of the San Francisco Police Department and the Department of Alcohol Beverage Control was drawn to "The Room" because of a ***stabbing incident*** there on June 14, 2009.

On June 15, 2009, San Francisco Police Officer Buckner sent Mike Quan a letter, informing him that his bar was "out of compliance with the permit conditions set forth by the San Francisco Entertainment Commission." Officer Buckner faxed a copy of the letter to Investigator that same day with a message stating: "I appreciate anything you can do to assist us with our enforcement of this location."

On June 19, 2009, The Room did not have a license to sell alcohol in its basement, but ABC investigators nonetheless observed a bartender doing so. Investigator Ott initially requested Officer Bertrand to detain a bartender, now known to be plaintiff Javier Magallon, because he was impeding the investigation and refusing to provide his identification. Officer Bertrand handcuffed plaintiff Magallon behind his back and sat him on a couch in the basement. Plaintiff Magallon, who is a martial arts expert, slipped the handcuffs to the front of his body while sitting on a couch. A small scuffle ensued to return plaintiff Magallon to a normal handcuffed position.

2

1  Plaintiff Magallon never sought any medical treatment for any alleged injuries. Several bottles of

2  alcohol were seized from the basement as evidence. The contents of other bottles from the

3  basement bar were emptied because of their contamination, and with the consent of plaintiff Mike

4  Quan.

5       Plaintiff Javier Magallon, a bartender at The Room, brings a single claim for relief against

6  Officer Bertrand and Investigator Ott for assault and battery, wrongful arrest, and kidnapping

7  based upon his detention and arrest on June 19, 2009. Pl. Compl. ¶¶ 18-23.

8       Plaintiffs Mike Quan and Playbar Inc. bring the second claim for relief for fraud by mail,

9  unlawful interruption of business, abuse of police power, and destruction/theft of property for the

10  law enforcement activities on June 19, 2009, in which the basement portion was closed and liquor

11  confiscated. Pl. Compl. ¶¶ 28-32.

12       Plaintiffs also bring a third claim for relief, styled as a civil RICO claim.

13       Under California law "the mere application for a [permanent liquor license] . . . confers no

14  vested property interest in the applicant." *Contra Costa Theatre, Inc. v. City of Concord*, 511 F.

15  Supp. 87, 90 (N.D. Cal. 1980), *aff'd* 686 F.2d 798 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085,

16  (1983). Therefore, it remains unclear how plaintiffs Quan or Playbar can maintain his second

17  claim for relief, having only sought, but not yet received, a liquor license at the time of the

18  incident in June 2009.

19       Regardless of plaintiff Quan's assertion, Investigator Ott is entitled to absolute immunity for

20  her actions under California Government Code section 821.2, which provides, "A public

21  employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or

22  by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate,

23  approval, order, or similar authorization where he is authorized by enactment to determine

24  whether or not such authorization should be issued, denied, suspended or revoked." Likewise, the

25  State of California's Department of Alcohol Beverage Control is entitled to absolute immunity for

26  all of its actions under California Government Code section 818.4, which provides that a "public

27  entity is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by

28  his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval,

3

1   order, or similar authorization where he is authorized by enactment to determine whether or not

2   such authorization should be issued, denied, suspended or revoked."

3       Plaintiff Javier Magallon unlawfully refused to provide identification when requested to do

4   so by Investigator Ott on June 19, 2009, and interfered with her investigation.  Moreover, he

5   became hostile, combative, and argumentative during the time that she questioned him, which

6   presented law enforcement officers there with safety concerns. As a result, ABC Investigator Ott

7   had legal justification to detain him.  Officer Bertrand placed Magallon in handcuffs behind his

8   back.  Magallon then attempted to slip the handcuffs to the front of him, by his own admission.  A

9   small scuffle ensued as the San Francisco police officers regained control of Magallon, who was

10  then removed from the basement.

11      California Penal Code section 847(b)(1) provides that "there shall be no civil liability on the

12  part of, and no cause of action shall arise against, any peace officer or . . . law enforcement officer

13  . . ., acting within the scope of his or her authority, for false arrest or false imprisonment arising

14  out of any arrest under the following circumstances:    The arrest was lawful, or the peace officer,

15  at the time of the arrest, had reasonable cause to believe the arrest was lawful."

16      Accordingly, defendants are entitled to summary judgment with respect to the first claim

17  for relief made by plaintiff Magallon.

18      Finally, plaintiffs' civil RICO claim for relief has both insufficient allegations and

19  absolutely no evidence to support it.

20  **II.    STATEMENT OF FACTS**

21          **A.    Alcoholic Beverage Control Investigator Michelle Ott Begins Work With**
22          **San Francisco Police Officer Larry Bertrand To Reduce Crime In San**
            **Francisco's South Of Market Area.**

23      In April 2009, Investigator Michelle Ott began to work with San Francisco Police Officer

24  Larry Bertrand. Ott Decl. ¶ 4.  They soon started to work collaboratively in the South of Market

25  area (SOMA) of San Francisco, as well as citywide, to reduce criminal actions and to ensure

26  compliance with existing statutes and regulations. *Ibid.*  Investigator Ott had learned that a

27  number of serious criminal incidents in several nightclubs and bars in SOMA caused concern

28  with the nearby residents, as well as with patrons visiting those establishments. *Ibid.*  Due to these

4

1   increasing problems with public safety, law enforcement officers and entities in SOMA became

2   more concerned about activities there. *Ibid*.

3          **B.     A Stabbing Incident Occurring At The Room Bar Located At Sixth Street**
               **Attracts The Attention Of Law Enforcement Entities And Officers**
4

5          On June 14, 2009, San Francisco police officers responded to reports of a stabbing at the

6   basement of "The Room" located on 6th Street in SOMA. Ott Decl. ¶ 5.  In response to the

7   stabbing incident at The Room, on June 15, 2009, SFPD Officer Gary Buckner sent Investigator

8   Ott a fax, which included a letter that he earlier forwarded to Mike Quan dated June 15, 2009, that

9   informed Mr. Quan he was out of compliance with permit conditions set forth by the San

10  Francisco Entertainment Commission. Officer Buckner's fax to Investigator Ott stated: "I

11  appreciate [sic] anything you can do to assist us with our enforcement of this location." *Ibid*.  In

12  addition to the facsimile she received from Officer Buckner, Investigator Ott had received an

13  earlier citizen complaint about the premises. *Ibid*.

14         Since Investigator Ott's duties at the Department of Alcohol Beverage Control involve

15  investigations, but not licensing matters directly, she inquired about the licensing status of The

16  Room with ABC licensing representative, Andrew Omahen. Omahen Decl. ¶ 10; Ott Decl. ¶ 6.

17  From her discussions with Andrew Omahen, along with her review of the materials in the ABC

18  licensing file that related to The Room, she formed the opinion that the basement portion of The

19  Room was not licensed to sell alcohol. Ott Decl. ¶ 7.  The absence of licensing for the basement

20  portion of The Room was further buttressed by materials that she reviewed in the file, which

21  included a letter in from Andrew Omahen to the licensee Playbar, Inc. about requirements that

22  needed to be fulfilled in order to make a licensing determination about the basement portion of

23  The Room. *Ibid*.

24         After Investigator Ott determined (with the assistance of Andrew Omahen's analysis) that

25  the basement portion of The Room was not licensed to sell alcohol, she then decided that an

26  attempt should be made to learn if alcoholic beverages were being illegally sold there. *Ibid*.

27         Investigator Ott's supervisor at the time, Justin Gebb, agreed with the decision, and she

28  went forward with the investigation. *Ibid*.

1

**C.      Undercover Investigation At The Room Reveals That Alcoholic Beverages Are Being Sold Without Proper Licensing, In Violation Of California Law**

2

3       On June 19, 2009, ABC Investigators Martinez and Anderson, who were operating

4   undercover and in plain clothes, entered The Room at approximately 10:30 p.m. and purchased

5   alcoholic beverages from the bar in the licensed portion of the premises (i.e., street level). Ott

6   Decl. ¶ 9. At that time, the basement area of the premises (*i.e.*, the unlicensed portion) was not yet

7   open to patrons. At approximately 11:39 p.m., Investigator Martinez communicated through text

8   message that he had purchased an alcoholic beverage from the bar in the basement from the

9   bartender, later identified as Javier Magallon. *Ibid*.  Officer Bertrand, Officer Buckner, and

10  Investigator Ott, who were all also working in plain clothes, entered The Room at approximately

11  11:45 p.m. and went downstairs to the basement to observe activity taking place in the unlicensed

12  portion of the premises. *Ibid*.  There were approximately 60 patrons in the basement area, most of

13  which were either consuming or purchasing alcoholic beverages.  Investigator Martinez gave

14  Investigator Ott a sample bottle of the alcoholic beverage that he had purchased and also

15  identified the bartender (who was later identified as Javier Magallon) who sold it to him. *Ibid*.

16  Investigators Martinez and Anderson left the premises shortly after that. *Ibid*. Investigator Ott

17  located Mike Quan, who she believed to be one of the owners of The Room, in the upstairs

18  portion of the premises. *Ibid*.  She approached and identified herself as a law enforcement officer

19  both verbally and by showing her ABC credentials.  Investigator Ott hung her badge around her

20  neck where it remained visible throughout the entire investigation at The Room. *Ibid*.

21      Investigator Ott interviewed Quan regarding his knowledge of the basement not being part

22  of the licensed premises.  Quan said he was not aware that it was not licensed and that he thought

23  his "attorney" took care of it recently. Ott Decl. ¶ 10.

24      Investigator Ott instructed Quan that patrons from the unlicensed basement portion of The

25  Room would need to move to the (licensed) street level portion of The Room in order to do an

26  inspection.  She advised Quan to contact his security personnel to move the patrons from the

27  basement, to the street level of the premises, in an orderly fashion.  Quan shook his head and said

28  he thought it was better to just "shut down."  Investigator Ott informed Quan that it was up to him

6

1   about how he wanted to run his business, but reminded him that the street level portion of the

2   premises was licensed in compliance with ABC regulations.  Quan decided to remove all the

3   patrons and advised his security personnel to clear everyone out of The Room for the night.

4         Due to inadequate security at the premises, and for officer safety concerns, Quan was

5   instructed that all patrons were prohibited from remaining inside of the basement area during the

6   investigation. Ott Decl. ¶ 12.  There were officer safety concerns due to several prior contacts

7   with patrons at The Room in the past, and security not acting in a manner that was safe or

8   adequate. *Ibid*.  As earlier mentioned, one week prior, when there was the stabbing incident in the

9   unlicensed portion of the premises, the security was unable to adequately assist law enforcement

10  officers in moving patrons out in a safe and timely manner, causing the crime scene to ultimately

11  become contaminated. *Ibid*.

12      **D.**    **Bartender Javier Magallon Refuse The Lawful Request For Identification,**
13              **And Then Attempts To Slip His Handcuffs With Partial Success**

14        Investigator Ott approached bartender Javier Magallon, who was standing behind the bar,

15  and identified her self as a law enforcement officer both verbally and by showing her ABC

16  credentials. Ott Decl. ¶ 13.  Investigator Ott's badge was visible and hanging around her neck.

17  She asked Magallon if he could answer a few questions.  The questions were part of her

18  investigation. Magallon shook his head "No" and said that he didn't do anything wrong.

19  Investigator Ott informed Magallon that he wasn't in any trouble and if he didn't wish to speak to

20  her about the investigation, he didn't have to. *Ibid*.  Investigator Ott told Magallon that at a

21  minimum, she needed to get his basic information, such as his name, date of birth, and address,

22  for her report. Investigator Ott told Magallon that she needed to identify him and that he was

23  going to be detained if he didn't provide the information to her. Magallon refused and remained

24  uncooperative, shouting vulgarities. Ott Decl. ¶ 13; Devine Decl. ¶ 2.  She informed Officer

25  Bertrand that Magallon was being uncooperative and that he needed to be detained for reasons

26  that included having him calm down for a few minutes.  *Ibid*.  Investigator Ott asked Magallon to

27  step out from behind the bar and then to put his hands behind his back. *Ibid*. Officer Bertrand

28

1   handcuffed Magallon and they walked him over to the couch in the basement portion of The

2   Room.  Ott Decl. ¶ 13.

3         As Magallon was sitting down on the couch, he quickly slipped his cuffed hands from

4   under his rear-end and ended up getting one leg through his handcuffs. Devine Decl. ¶ 2; Ott

5   Decl. ¶ 14.  Magallon was partially successful in moving his hands, which had been handcuffed

6   behind his back, to his front. *Ibid*.  This action presented an immediate officer safety concern.

7   Officer Bertrand moved to gain control of Magallon's upper body and Investigator Ott moved to

8   gain control of his legs.  All the while Magallon was kicking, twisting, and resisting attempts to

9   gain control.  Officer Buckner told Investigator Ott to move over and as he gained control of

10  Magallon's legs, while Officer Bertrand was still trying to gain control of Magallon's upper body.

11  Ott Decl. ¶14.  Magallon continued struggling and resisting.  Officers Bertrand and Buckner were

12  eventually able to gain control of Magallon, and they then proceeded to un-handcuff him and

13  place his hands behind his back.  Magallon was again handcuffed with his hands behind his back.

14  *Ibid*.

15        At this point, Magallon was told he was under arrest for resisting a peace officer.  Officers

16  Bertrand, Buckner, and Investigator Ott escorted Magallon upstairs, while Magallon continued to

17  curse and struggle. Ott Decl. ¶ 15. During this time Magallon was resisting and trying to get out

18  of his handcuffs.  Magallon was transferred to a uniformed officer who had a marked unit, to

19  transfer him to SFPD's Southern Station, where he was taken to confirm his identify. *Ibid*.

20  **E.    Law Enforcement Officers Continue Their Investigation Of The Room's**
21  **Basement**

22        The law enforcement officers went back downstairs and Investigator Ott told Quan that she

23  was going to do an inspection of the bar. Ott Decl. ¶16.  The results of her inspection yielded at

24  least 35 bottles of distilled spirits that had contaminants (insects or other deleterious substances)

25  in them.  She had the bottles of distilled spirits organized in groups, such as unopened distilled

26  spirits, and opened, contaminated bottles of distilled spirits. *Ibid*. Investigator Ott advised Quan

27  that she would be seizing all of the unopened bottles of distilled spirits.  She informed Quan that

28  she would be seizing 7 bottles of contaminated distilled spirits, as a representative sample.

8

1   Investigator Ott asked him if he wanted her to seize the rest of the contaminated bottles as

2   evidence, or to dispose of them at that time. *Ibid*. Quan said to "just pour them out!  Get rid of

3   them; I can't use them anyway."  Investigator Ott advised Quan that any beer or wine could be

4   moved upstairs, to the licensed portion of the bar. *Ibid*.  Quan said "Ok."  Investigator Ott was

5   approached by a bar back employee (later identified as Christen A. Westerlin) who asked if she

6   needed help moving anything. *Ibid*.  She told Westerlin what bottles could be moved upstairs and

7   he proceeded to get boxes, fill them, and make several trips upstairs to clear out the bar area. *Ibid*.

8           Investigator Ott filled out three ABC-320 Evidence/Property Receipt/Reports and had Quan

9   sign them, also providing him with a copy of each one.  Ott Decl. ¶ 17.

10          Quan was issued an Alcoholic Beverage Control Department citation for violating

11  California Business & Professions Code section 23300 (Sales of an Alcoholic Beverage Without

12  a License), California Business & Professions Code section 23355 (Exceeding License

13  Privileges), and California Penal Code section 347(b) (Poisonous Alcoholic Solutions).  Quan

14  signed his citation and was released at the scene. Ott Decl. ¶ 18.

15          Investigator Ott concluded her investigation at approximately 3:15 a.m.

16          **F.      The Basement Portion Of The Room Was Not Licensed By ABC To Sell
                     Alcohol Before November 2010**

17

18          The following information is reflected in the official ABC business records relating to the

19  licensee Playbar, Inc., doing business as The Room.

20          ABC license number 48-433061 was issued on January 10, 2006, and was cancelled

21  effective November 24, 2010. At no time during when this license was active did it encompass

22  the basement area of the licensed premises. Botting Decl. ¶ 4; Omahen Decl. ¶¶ 3-12.

23          On or about May 11, 2010, Michael M. Quan and William Lee Worthington (President and

24  Secretary, respectively, of Playbar, Inc.), filed an application to transfer ABC license number 48-

25  433061 for the purpose of expanding the licensed premises to encompass the basement. Botting

26  Decl. ¶ 4

27

28

9

1    The application was approved, with the imposition of conditions on the license, on

2    November 22, 2010, and license number 48-489599 was issued by the ABC effective November

3    24, 2010.  The present license encompasses the basement portion of The Room. Botting Decl. ¶ 4

4                                          **ARGUMENT**

5    **I.      LEGAL STANDARDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

6          Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

7    where the pleadings, discovery, and affidavits show that there is "no genuine issue of material

8    fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

9    While the Court must examine all of the evidence in the light most favorable to the nonmoving

10   party in considering the motion for summary judgment, *United States v. Diebold, Inc.,* 369 U.S.

11   654 (1962); *Reynolds v. County of San Diego*, 84 F.3d 1162, 1166 (9th Cir. 1996), once the

12   moving party meets the initial burden, the nonmoving party must go beyond the pleadings and, by

13   its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come

14   forth with specific facts to show that a genuine issue of material fact exists and that a reasonable

15   jury could return a verdict for the nonmoving party.  *Lindahl v. Air France*, 930 F.2d 1434, 1436-

16   37 (9th Cir. 1991) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986)).  A party

17   cannot defeat a summary judgment motion by producing a "mere scintilla of evidence to support

18   its case."  *City of Vernon v. Southern California Edison Co.,* 955 F.2d 1361, 1369 (9th Cir. 1992),

19   cert. denied, 506 U.S. 908 (1992); *Neely v. St. Paul Fire and Marine Ins. Co.,* 584 F.2d 341, 344

20   (9th Cir. 1978) ("While summary judgment is improper if sufficient evidence supporting a

21   claimed factual dispute is adduced . . . this evidence must be 'significantly probative' of the

22   disputed fact").  Unless the nonmoving party brings forth sufficient evidence to demonstrate the

23   existence of genuine issues for trial, summary judgment is appropriate.  *Liberty Lobby*, 477 U.S.

24   at 249-50.

25

26

27

28

                                                10

II.     **BACKGROUND OF THE ALCOHOLIC BEVERAGE CONTROL LAWS FOR THE STATE OF CALIFORNIA, WHICH DEMONSTRATE THAT PLAYBAR INC. WAS NEVER LICENSED TO SELL ALCOHOL IN THE BASEMENT PORTION OF THE ROOM**

California Constitution Article 20, §22 states in pertinent part:

The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in the accordance with laws enacted by the Legislature, to license, to manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The Department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. It shall be unlawful for any person other than the licensee of said department to manufacture, import or sell alcoholic beverages in this State.

The California Constitution vests "broad discretionary powers" in the ABC relative to liquor licenses. *Martin v. ABC (Chaney)*, 52 Cal.2d 259,261(1959); *Martin v. ABC (Haley)*, 52 Cal.2d 287, 294 (1959); *Camille v. ABC Appeals Board,* 99 Cal.App.4th 1094, 1099 (2002). "These provisions provide the ABC with broad authority to act, even in the absence of fault on the licensee's part or actual knowledge of wrongdoing that might lead to suspension or revocation." *Santa Ana Food Market v. ABC Appeals Board,* 76 Cal.4th 570, 573 (1999).

"Liquor licensing is unique.  While a license to practice a trade is generally considered a vested property right, a license to sell liquor is a privilege that can be granted or withheld by the State." *Yu v. ABC Appeals Board*, 3 Cal.App.4th 286, 297(1992).  "It must be remembered that the department is an agency upon which the Constitution has conferred limited judicial powers." *Meyers v. ABC Appeals Board*, 238 Cal.2d 869, 875 (1965).  The Alcoholic Beverage Control Act is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State.  Cal. Bus. & Prof. Code §§23000, 23001. The ultimate fact for determination by the department in passing upon an application for the transfer of a license is "whether the granting would be contrary to the public welfare and morals." *Martin v. ABC (Chaney), supra,* 52 Cal.2d at 264.  An application for a license or for transfer of a license is to be denied if the ABC determines there would be an adverse affect on the public

11

welfare and morals or if issuance would tend to create a law enforcement problem.  Cal. Bus. & Prof. Code §23958.

Business and Professions Code § 23300 states, "no person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division. Any person violating §23300 is guilty of a misdemeanor.  Cal. Bus. & Prof. Code §23301.  A liquor license authorizes "the person to whom issued to exercise the rights and privileges specified in this article and no others at the premises for which issued..."  Cal. Bus. & Prof. Code §23355.

Playbar Inc. never obtained an ABC license to serve alcohol in the basement portion of The Room.  ABC license number 48-433061 was issued on January 10, 2006, for Playbar Inc., doing business as The Room, and it was cancelled effective November 24, 2010.  Botting Decl. ¶4.  At no time while this license was active did it encompass the basement area of the licensed premises. *Id.* at ¶4.  Indeed, on or about May 11, 2010, Michael M. Quan and William Lee Worthington (President and Secretary, respectively, of Playbar, Inc.), filed an application to transfer ABC license number 48-433061 for the purpose of expanding the licensed premises to encompass the basement. *Id.* at ¶4. The application was approved, with the imposition of conditions on the license, on November 22, 2010, and license number 48-489599 was issued by the ABC effective November 24, 2010, which license encompasses the basement portion of The Room. *Id.* at ¶4.

Under California law "the mere application for a [permanent liquor license] . . . confers no vested property interest in the applicant." *Contra Costa Theatre, Inc. v. City of Concord*, 511 F. Supp. 87, 90 (N.D. Cal. 1980), *aff'd* 686 F.2d 798 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085, (1983).  Therefore, it remains unclear how plaintiffs Quan, and more specifically Playbar Inc., can maintain any claim for relief for having only sought an expanded liquor license for The Room.  In other words, at all times related to the allegations in this lawsuit, Playbar Inc. did not have a license for the basement portion of The Room.

Plaintiff Quan is a sophisticated businessman with a M.B.A. He received ample notice that the basement portion of The Room was not licensed by way of ABC Licensing Representative

12

1  Andrew Omahen's letter to him in February 2009 and Mr. Omahen's telephone conference with

2  Quan and his attorney in March 2009, which events occurred well before the incident that is the

3  subject of this lawsuit. Omahen Decl. ¶¶ 5 & 8.

4  **III.   PLAINTIFF QUAN HAS NO STANDING TO FILE AN ACTION BASED ON
        ANY ACTION OF THE ABC, AND HIS FAILURE TO EXHAUST**

5  **ADMINISTRATIVE REMEDIES PRECLUDES THIS ACTION**

6       The ABC Act and APA clearly provide an administrative remedy where an individual is

7  denied a liquor license.  Plaintiff's failure to challenge the non-issuance of a license through the

8  available procedures clearly bars his entire action.

9       Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts.

10 *Johnson v. Loma Linda*, 24 Cal.4th 61, 70 (2000). "Where an administrative remedy is provided

11 by statute, relief must be sought from the administrative body, and this remedy must be exhausted

12 before the courts will act. *Fiscus v. Department of Alcoholic Beverage Control*, 155 Cal.App.2d

13 234, 236 (1957).  The ABC Act provides an administrative remedy for a person denied a liquor

14 license. *Id*. at 236-237.

15      Upon denial of an application for a license, the applicant can submit a written petition to the

16 department (Cal. Bus. & Prof. Code § 24011) which is then set for hearing (Cal. Bus. & Prof.

17 Code § 24012) conducted under the procedures of the APA (Bus. & Prof. Code §24016).

18 California Business and Professions Code section 23090 allows any person affected by a final

19 order of the ABC to apply to the Supreme Court or Court of Appeal for a writ of review of such

20 order.

21      "Until that procedure has been completed, plaintiffs have no standing to ask for judicial

22 relief because they have not yet exhausted the remedies given them by the statute. *Walker v.*

23 *Munro*, 178 Cal.App.2d 67, 72 (1960) (Individual or entity must exhaust under the ABC Act).  A

24 court is without jurisdiction to review the action of the ABC absent the exhaustion of

25 administrative remedies.  *Miller v. Dept. of ABC*, 160 Cal.App.2d 658, 664 (1958).  Here, it is

26 undisputed that plaintiff Quan and Playbar Inc. never pursued their ABC administrative remedies.

27 For this additional reason, plaintiff Quan has no standing to maintain this action and this Court is

28 without jurisdiction to hear plaintiff Quan's state law claims.

13

1

IV.   **THE STATE OF CALIFORNIA IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF QUAN'S SECOND CLAIM FOR RELIEF**

2

3

A.   **No Statute Authorizes An Action For A Constitutional, Or Other Violation, Based On Denial, Suspension Or Revocation Of A Liquor License**

4

California Government Code section 815.6 provides:  "Where a public entity is under a

5

mandatory duty imposed by an enactment that is designed to protect against the risk of a

6

particular kind of injury, the public entity is liable for an injury of that kind proximately caused

7

by its failure to discharge the duty unless the public entity establishes that it exercised reasonable

8

diligence to discharge the duty." Cal. Gov't Code § 815.6.

9

Whether an enactment is intended to impose a mandatory duty is a question of law for the

10

court.  "First and foremost, application of section 815.6 requires that the enactment at issue be

11

obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it

12

must require, rather than merely authorize or permit, that a particular action be taken or not taken.

13

It is not enough, moreover, that the public entity or officer have been under an obligation to

14

perform a function if the function itself involves the exercise of discretion."  *Haggis v. City of Los*

15

*Angeles*, 22 Cal.4th 490, 498 (2000).  The *Haggis* decision makes clear that to establish a cause of

16

action a statute must (1) require that a particular action be taken or not taken, such as granting a

17

license or declining to suspend or revoke a license and (2) the required action must not involve

18

the exercise of discretion.  Under the ABC Act, neither condition exists.  There is no statute that

19

requires a liquor license be granted or not granted under any circumstances.  Second, the State of

20

California Constitution and statutes make clear that the ABC has broad discretionary powers in its

21

licensing activity.  Business and Professions Code section 23958 illustrates this broad discretion.

22

This provision allows the ABC to deny a license if issuance of the license negatively affects the

23

public welfare and morals or if it would tend to create a law enforcement problem.  Thus, there is

24

no statute that creates a mandatory duty to plaintiff for a constitutional or other violation.

25

There is no statute imposing a mandatory duty to issue a liquor license to plaintiff Quan.

26

The California Tort Claims Act differentiates between entity liability (Cal. Govt. Code § 815 et

27

seq.) and employee liability (Govt. Code § 820 et seq.).  *Bradford v. State of California*, 36

28

14

Cal.App.3d 16, 19 (1974).  California Government Code section 815.2(a) then provides for one particular kind of entity liability, namely, liability for acts or omissions of employees if their acts or omissions create a cause of action against such employees.  This derivative type of entity liability depends, generally, on the employee for whom the entity is responsible, not being personally immune. California Government Code §815.2(a) is based on the doctrine of respondeat superior.  *Hoff v. Vacaville Unified*, 19 Cal.4th 925, 932 (1998).

For employee liability to occur there must be a duty and breach thereof.  *Hoff v. Vacaville Unified, supra*, 19 Cal.4th at 933.  In this lawsuit, no ABC employee had a duty to issue plaintiff a liquor license.  In fact, ABC employees had a duty under the ABC Act not to issue a license until after an investigation to determine whether the issuance of a license would be detrimental to the public welfare or morals or would cause a law enforcement problem.  Cal. Bus. & Prof. Code § 23958.

Finally, interference with a contract and interruption of business are common law torts. *Max Factor v. Kunsman*, 5 Cal.2d 446, 464 (1936).  Likewise, interference with prospective economic advantage is a common law tort.  *Fisherman Wharf Bay Cruz Corp. v. Superior Court*, 114 Cal.App.4th 309, 316 (2004).  Thus, a claim for relief based upon these alleged interferences or interruptions cannot be stated against the State of California or its employees.

Even assuming arguendo there was a duty and a breach thereof, the entity and employee immunities under California Government Code sections 818.4, 821.2, and 821.6 preclude liability as a matter of law.

**B.   Defendants Are Entitled To Immunity For Their Actions Pursuant To The Licensing Immunities of California Government Code Sections 818.4 And 821.2**

The licensing immunity of California Government Code section 818.4 bars plaintiff Quan's action against the State. California Government Code section 818.4 provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval order, or similar authorization where the public entity or an employee of the public entity is

15

1   authorized by enactment to determine whether or not such authorization should be issued, denied,

2   suspended or revoked." Cal. Gov't Code § 818.4.

3        "The decision to issue a license is a discretionary act. Public entities, such as the State

4   Athletic Commission, are immune from liability for injury caused by the refusal to issue a license

5   or permit when the entity is authorized by law to determine whether or not the license should be

6   issued." *Colome v. State Athletic Commission,* 47 Cal.App.4th 1444, 1455 (1996). *See also*

7   *MacDonald v. State of California*, 230 Cal.App.3d 319, 330 (1991) ("It is, however, clear that the

8   predominant character of licensing is discretionary.")

9        As previously addressed, the California Constitution and the Alcoholic Beverage Control

10  Act make abundantly evident that the ABC has broad discretion relating to liquor licensing

11  activity including issuance, denial, transfer, suspension or revocation of licenses.  Thus, the ABC

12  was authorized by law to determine whether or not a liquor license should be issued to Playbar

13  Inc. for the basement portion of The Room.  Therefore, plaintiff Quan's action is barred by the

14  immunity conferred by Government Code section 818.4.

15       In addition, liability is also precluded under the employee licensing immunity of section

16  821.2. California Government Code section 821.2 states:

17       A public employee is not liable for injury caused by his issuance, denial, suspension
     or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any
18   permit, license, certificate, approval, order, or similar authorization where he is
     authorized by enactment to determine whether or not such authorization should be
19   issued, denied, suspended or revoked.

20       The California District Court of Appeal has held that, "it is State policy to protect its public

21  officials from decisions made in the course and scope of their employment.  The immunity for

22  State employees in licensure cases is absolute." *Colome v. State Athletic Commission*, 47

23  Cal.App.4th 1444, 1456 (1996).  The broad discretion of an ABC employee under the ABC Act

24  to determine whether a license should be issued, denied, suspended or revoked clearly results in

25  immunity in this case.

26       Regardless of plaintiff Quan's allegations, Investigator Ott is entitled to absolute immunity

27  for her actions under California Government Code section 821.2, and likewise, the State of

28  California's Department of Alcohol Beverage Control is entitled to absolute immunity for all of

                                        16

1    its actions under California Government Code section 818.4.  In the final analysis, plaintiff Quan

2    is legally and solely responsible for his own failures to obtain a proper license for Playbar Inc.,

3    especially since he and his attorneys were put on notice that they did not have a license to sell

4    alcohol in the basement of his premises.

5       **C.    The State Is Immune Pursuant To Government Code Section 821.6**

6       Government Code section 821.6 states, "a public employee is not liable for injury caused by

7    his instituting or prosecuting any judicial or administrative proceeding within the scope of his

8    employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6.

9    This immunity applies to the State pursuant to California Government Code section 815.2(b).  A

10   public entity is not liable if the employee is immune from liability. *Amylou R. v. County of*

11   *Riverside,* 28 Cal.App.4th 1205, 1208-1209(1994).  *Kaplan v. Labarbera,* 58 Cal.App.4th 175,

12   180 (1997).  Employee immunities are a defense to derivative liability under California

13   Government Code section 815.2(a).  *Bradford v. State of California, supra*, 36 Cal.App.3d at 20-

14   21.

15      "The policy behind section 821.6 is to encourage fearless performance of official duties.

16   State officers and employees are encouraged to investigate and prosecute matters within their

17   purview without fear of reprisal from the person or entity harmed thereby. Protection is provided

18   even when official action is taken maliciously and without probable cause." *Javor v. Taggart,*

19   *supra,* 98 Cal.App.4th at 808.  "Section 821.6 is not limited to conduct occurring during formal

20   proceedings.  It also extends to actions taken in preparation for formal proceedings.  Because

21   investigation is an essential step toward the institution of formal proceedings, it is also cloaked

22   with immunity." *Ibid.*  In *Javor*, an employee of the uninsured employer's fund conducted an

23   investigation into worker's compensation benefits paid by the State, erroneously concluded that

24   the State was entitled to reimbursement from plaintiff for the benefits paid and recorded a lien

25   against plaintiff's residence.  *Id* at 799-801. The plaintiff asserted causes of action for slander and

26   clouding of title, intentional infliction of emotional distress, negligence, and violation of the state

27   Constitution.  *Id* at 801-802.  (Emphasis added).  The *Javor* court held that the defendant was

28   immune from liability as to the all state law causes of action under California Government Code

17

1  section 821.6.  *Id*. at 809.  The *Javor* court concluded, "in the present case, the importance of

2  granting immunity under Section 821.6 cannot be overstated.  Defendants work within the

3  administrative system established to implement the objectives of the Worker's Compensation Act.

4  They are charged with seeking reimbursement from illegally uninsured employers after the state

5  pays benefits to an injured employee.  Their decisions are made in the course of investigations

6  and also through formal administrative proceedings." *Id*. at 809.

7      Similarly, the employees of the ABC work within the administrative system established to

8  implement the objectives of the Alcoholic Beverage Control Act.  Their decisions are also made

9  in the course of investigations and also through formal administrative proceeding.  Here, it is

10  incontrovertible that the actions of ABC employees relative to the subject liquor license was

11  conduct occurring during investigation of actual or potential administrative proceedings against

12  the subject license.  An owner of a bar selling in unlicensed portions of the premises without a

13  license is guilty of a misdemeanor.  Cal. Bus. & Prof. Code §§23300-23301.

14      Therefore, the State of California defendants are entitled to immunity.

15  **V.    PLAINTIFF JAVIER MAGALLON WAS LAWFULLY DETAINED AND
        ARRESTED, SO DEFENDANTS ARE ENTITLED TO SUMMARY**
16      **JUDGMENT FOR HIS FIRST CLAIM FOR RELIEF**

17      **A.    Investigator Ott Lawfully And Justifiably Detained Plaintiff Magallon**

18      Encounters between law enforcement officers and members of the public are characterized

19  as follows: (1) voluntary encounters, in which a citizen freely cooperates and responds to non-

20  coercive questioning from officers; (2) *Terry* stop, which are typically brief, nonintrusive

21  detentions during which officers ask preliminary investigative questions and may even frisk a

22  citizen for weapons if necessary for their safety; and (3) arrests, which usually occur when a

23  detention or search becomes lengthy or highly intrusive.  *See United States v. Griffin*, 7 F.3d

24  1512, 1516 (10th Cir. 1993).

25      An officer has every right to talk to anyone he encounters while regularly performing his

26  duties.  Until the officer asserts some restraint on the contact's freedom to move, no detention

27  occurs.  *People v. Castaneda*, 35 Cal.App.4th 1222, 1227 (1995); *see United States v.*

28  *Mendenhall*, 446 U.S. 544, 553-554 (1980).

18

1    In the present case, Investigator Ott was actively engaged in a criminal investigation about

2    the illegal sale of alcohol in the basement portion of The Room when she encountered plaintiff

3    Magallon.  Magallon had previously been identified by other ABC investigators as the individual

4    who impermissibly sold alcohol to patrons of The Room in its basement area.

5    The *Terry* doctrine provides that with a reasonable and articulable suspicion, a police

6    officer may make a brief stop or seizure of the individual to investigate suspected past or present

7    criminal activity. Such a seizure will be upheld as constitutionally permissible so long as it was

8    justified at its inception, and if the action taken was reasonably related in scope to the

9    circumstances which justified the interference. *United States v. Acosta-Colon,* 157 F.3d 9, 14 (9th

10   Cir. 1998).

11   In *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004)**,** the Supreme Court held that

12   during a *Terry* stop, a law enforcement officer is lawfully permitted to demand the defendant

13   identify himself.[1]

14   Defendants in this lawsuit do not contest that a detention or seizure occurred.  The detention

15   here arose out of what started as an investigative contact.  In attempting to make this investigative

16   contact, however, officer safety issues arose that necessitated the detention through an application

17   of handcuffs.  Plaintiff Magallon, in his own testimony, acknowledged that he got upset and

18   shouted during questioning from Investigator Ott.  Devine Decl., Ex. 1, Magallon Depo. 117:4-7.

19   Indeed, he shouted "I don't give a fuck" and "Take me to jail" to Investigator Ott during her

20   questioning of him. *Ibid*.  Moreover, during this time of questioning concerns of about plaintiff

21   Magallon's true name and identity arose. *Id*. at 117:14-118:18.

22   Officer safety concerns were prominent in the Supreme Court's *Terry* decision.  The

23   Supreme Court has continued to recognize officer safety concerns in a long line of auto stop,

24   driver and passenger, detention cases.  *See Maryland v. Wilson,* 519 U.S. 408 (1997).

25

26   _____

[1] California Penal Code section 148(a)(1) provides that "Every person who willfully
resists, delays, or obstructs any public officer, peace officer . . .shall be punished by a fine not
27   exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one
year, or by both that fine and imprisonment."

28

1    Accordingly, officer safety concerns are properly balanced against Fourth Amendment

2    protections.

3         During events at The Room, where there were already heightened concerns about security,

4    in light of the stabbing incident a week earlier, plaintiff Magallon acted in a manner that

5    exacerbated the concerns of Investigator Ott and Officer Bertrand.

6         Law enforcement officers conducting on-the-scene investigations involving potentially

7    dangerous subjects may take precautionary measures if they are reasonably necessary.  The

8    purpose of the *Terry* frisk is to allow the officer to pursue his investigation without the fear of

9    violence.  *Adams v. Williams,* 407 U.S. 143, 146 (1972); *see also United States v. Bautista,* 684

10   F.2d 1286, 1289 (9th Cir. 1982) (upholding use of handcuffs in a detention.)

11        Given all the circumstances that Investigator Ott faced, she justifiably decided to detain

12   plaintiff Magallon in handcuffs.  This decision was permissible under existing constitutional

13   standards.

14        **B.     Plaintiff Magallon Was Arrested When He Attempted To Escape From His**
             **Handcuffs**
15

16        False arrest is the "unlawful violation of the personal liberty of another" (Cal. Pen. Code §

17   236) the interference being absolutely unlawful and without authority.  *Singleton v. Perry*, 45

18   Cal.2d 489, 494 (1955). "False arrest" and "false imprisonment" are not separate torts.  False

19   arrest is merely one way of committing false imprisonment, and they are distinguishable only in

20   terminology.  *Collins v. City and County of San Francisco*, 50 Cal.App.3d 671, 673 (1975)

21   (quoted with approval by *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 752, fn 4. (1997)).  A

22   peace officer may lawfully arrest a person without a warrant if he has "reasonable cause to believe

23   that the person to be arrested has committed a public offense in his presence." Cal. Penal Code §

24   836.  Whether reasonable cause existed depends upon the facts known by the arresting officers at

25   the time of the arrest.  *Hamilton v. City of San Diego*, 217 Cal.App.3d 838, 844 (1990).

26        Probable cause to arrest under the U.S. Constitution is defined in very much the same terms

27   as reasonable cause under California law: "Probable cause to arrest arises when police officers

28   have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that

                                         20

1   the suspect had committed or was committing a crime.  *United States v. Moses*, 796 F.2d 281, 283

2   (9th Cir. 1986).

3        In this case, after Officer Bertrand sat plaintiff Magallon on the couch, he attempted to slip

4   the handcuffs that had been placed on his wrists behind his back. Devine Decl., Ex. 1, Magallon

5   Depo. 150:9-151:21.  Plaintiff Magallon partially succeeded in moving his handcuffs to the front

6   of his body. *Ibid.*  The law enforcement officers responded to this resistance by grabbing plaintiff

7   Magallon.  Officer Bertrand moved to gain control of Magallon's upper body and Investigator Ott

8   moved to gain control of his legs.  All the while plaintiff Magallon was kicking, twisting, and

9   resisting our attempt to gain control.  Officer Buckner told Investigator Ott to move over and as

10  he gained control of Magallon's legs, while Officer Bertrand was still trying to gain control of

11  Magallon's upper body.  Plaintiff Magallon continued struggling and resisting.  Officers Bertrand

12  and Buckner were eventually able to gain control of him, and they then proceeded to un-handcuff

13  him and place his hands behind his back.  Plaintiff Magallon was again handcuffed with his hands

14  behind his back.

15       At this point, Magallon was told that he was under arrest for resisting a peace officer.[2]

16       "Probable cause is a complete defense to a civil action for false arrest or false

17  imprisonment. *White v. Martin,* 215 Cal.App.2d 641, 643 (1963). More specifically, California

18  Penal Code section 847(b)(1) provides that "there shall be no civil liability on the part of, and no

19  cause of action shall arise against, any peace officer or . . . law enforcement officer . . ., acting

20  within the scope of his or her authority, for false arrest or false imprisonment arising out of any

21  arrest under the following circumstances:  The arrest was lawful, or the peace officer, at the time

22  of the arrest, had reasonable cause to believe the arrest was lawful."

23

24

25       [2] Plaintiff Magallon does not expressly make any excessive force claims against
     Investigator Ott, let alone any based upon the Fourth Amendment. As a matter of law, allegations
26   of injury without medical records or other evidence of injury are insufficient to establish
     excessive force claims under the Fourth Amendment. *Arpin v. Santa Clara Valley Transp.*
27   *Agency,* 261 F.3d 912, 922 (9th Cir. 2001).  During the struggle with Magallon after he slipped his
     handcuffs, she only held his feet for a very brief period before Officer Buckner interceded on her
28   behalf.

1      A peace officer may use reasonable force to make an arrest, prevent escape or overcome

2 resistance, and need not desist in the face of resistance.  Cal. Penal Code § 835a.  Assault and

3 battery claims against police officers require that unreasonable force be established.  *Edison v.*

4 *City of Anaheim,* 63 Cal. App. 4th 1269, 1272 (1998) ("By definition then, a prima facie battery is

5 not established unless and until plaintiff proves unreasonable force was used.").

6      Even if the peace officer errs and the suspect is ultimately acquitted or not prosecuted for

7 the offence for which he was arrested, the officer is shielded from liability if he or she had

8 reasonable cause for the arrest.  *Coverstone v. Davies*, 38 Cal.2d 315, 321-22 (1952), *cert. denied*,

9 344 U.S. 840.

10      For the reasons discussed, the arrests were lawful.  Therefore, the law enforcement officers

11 are shielded from liability for false arrest or false imprisonment.  Cal. Penal Code § 847(b).

12 Because the officers are immune to claims for false arrest or false imprisonment, so are the

13 defendants, who are their her employers.  Cal. Gov't Code § 815.2(b) ("Except as otherwise

14 provided by statute, a public entity is not liable for an injury resulting from an act or omission of

15 an employee of the public entity where the employee is immune from liability.")

16 **VI.    PLAINTIFFS CIVIL RICO CLAIMS ARE ENTIRELY UNSUPPORTED**

17      The elements of a civil RICO claim are as follows: "(1) conduct (2) of an enterprise (3)

18 through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to

19 plaintiff's business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18

20 U.S.C. §§ 1964(c),1962(c)).

21      A civil conspiracy is a combination of two or more persons who, by some concerted action,

22 intend to accomplish some unlawful objective for purpose of harming another which results in

23 damage.  *Vieux v. East Bay Regional Park Dist.,* 906 F.2d 1330, 1343 (9th Cir. 1989), *cert.*

24 *denied*, 498 U.S. 967 (1990).  To be actionable, the conspiracy must result in overt acts, done in

25 furtherance of the conspiracy, that are both the case in fact and proximate cause of plaintiff's

26 injuries.  *Sanchez v. City  of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990) (citations omitted),

27 *cert. denied*, 112 S.Ct. 417 (1991).  Under the Federal Rules, plaintiff must plead specific facts to

28 demonstrate the existence of, and overt acts taken in furtherance of, the conspiracy alleged in the

1    complaint.  *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980).  It is well settled under Ninth Circuit

2    precedent that plaintiff must do more than simply make a conclusory allegation of conspiracy to

3    survive a motion to dismiss.  *Id*., at p. 229.

4            Plaintiffs' generalized allegations of conspiracy do not meet these requirements.  Moreover,

5    none of the facts, as extensively and previously discussed, meet these requirements.  In sum, no

6    facts support the existence of any type of unlawful conspiracy among the defendants.  Instead,

7    plaintiff Quan summarily alleges that defendants made a predetermined decision to disrupt his

8    business and others in the area.  Plaintiffs do not describe any overt acts taken by defendants in

9    furtherance of this conspiracy.  *Sanchez, supra*, 936 F.2d at 1039.  Nor do they plead any specific

10   facts demonstrating the existence of the alleged conspiracy against them.  *Ellis, supra*, 625 F.2d at

11   229.

12           Moreover, civil liability under 18 U.S.C. section 1962(c) requires each named defendant to

13   have participated in the commission of two or more predicate crimes. *Miranda v. Ponce Federal*

14   *Bank*, 948 F.3d 41, 45 (1st Cir. 1991).  No evidence exists in this lawsuit that would meet this

15   requirement.

16           Plaintiff's complaint is similar to the complaint at issue in *Pelletier v. Zweifel*, 921 F.2d

17   1465, 1518-19 (11th Cir. 1991), in which the Eleventh Circuit affirmed the district courts

18   dismissal of a RICO claim because it was brought to harass the defendant and constituted

19   "shotgun" pleadings that made it extremely difficult for the court and opposing parties to

20   identify the facts that would give rise to a cognizable claim. Id. at 1518 (noting that defendant and

21   "the district court had to sift through the facts presented and decide for themselves which were

22   material to the particular cause of action asserted, a difficult and laborious task indeed").

23   Plaintiffs alleges that defendants are part of a criminal conspiracy, but make only conclusory

24   allegations lacking factual support. They sets forth a redundant narrative of allegations and

25   conclusions of law, but makes no attempt to allege what facts are material to his claims under the

26   RICO statute, or which facts are used to support what claims under particular subsections of

27   RICO.

28

23

1    The plain and simple fact remains that plaintiff Quan did not obtain the proper license for

2  The Room prior to the events of June 19, 2009. The failure caused the injury to his property.

3  Investigator Ott and the Department of Alcoholic Beverages only took the actions that they were

4  constitutionally and legally obligated to take, especially as it related to the unlicensed sale of

5  alcohol at The Room.

6    Accordingly, defendants request judgment in their favor for the third claim for relief, which

7  alleges a civil RICO violation.

8                                **CONCLUSION**

9    For the reasons mentioned, defendants Investigator Michelle Ott and Department of

10  Alcoholic Beverage Control request that their motion for summary judgment or, in the alternative,

11  motion for summary adjudication be granted by this Court.

12

13  Dated:  April 14, 2011                                    Respectfully Submitted,

14                                                            KAMALA D. HARRIS
                                                             Attorney General of California
15

16

17                                                            /s/ John Devine
                                                             JOHN P. DEVINE
18                                                            Deputy Attorney General
                                                             *Attorneys for*
19                                                            *State of California, acting by and through*
                                                             *the Department of Alcoholic Beverage*
20                                                            *Control, and Michelle Ott*

21
    SF2010200381
22  20433320.doc

23

24

25

26

27

28

                                        24