UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| MIKE QUAN, JAVIER MAGALLON, | No. C 10-01835 MEJ |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [Dkt. No. 47]** |
| v. | |
| SAN FRANCISCO POLICE DEPARTMENT, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is Plaintiffs Mike Quan and Javier Magallon's Motion for Leave to Amend Pleadings. Dkt. No. 47. Defendants City and County of San Francisco, former San Francisco Mayor Gavin Newsom, Officer Larry Bertrand (collectively, the "City Defendants"), and Defendants State of California acting by and through the Department of Alcohol Beverage Control and Michelle Ott (collectively, the State Defendants") have filed Oppositions (Dkt. Nos. 51, 53), to which Plaintiffs filed a consolidated Reply (Dkt. No. 54). On June 16, 2011, the Court held a hearing on Plaintiffs' Motion, during which time it questioned the parties' extensively about their respective arguments. Because Defendants have sufficiently demonstrated that Plaintiffs unduly delayed in seeking leave to amend their Complaint, and that permitting Plaintiffs to amend their Complaint at this stage of the case would unfairly prejudice Defendants, the Court **DENIES** Plaintiffs' Motion.

## II. FACTUAL AND PROCEDURAL HISTORY

The fundamental allegations, taken from Plaintiffs' Complaint, are as follows.

Mr. Quan is the proprietor of The Room, a nightclub located in San Francisco and operated by PlayBar, Inc. Compl. ¶¶ 2-3, Dkt. No. 1, Ex. B. The Room has a basement area, which Plaintiffs allege had lawfully been licensed to operate as an extended portion of the bar for purposes of serving

its clientele. *Id.* ¶ 19.

Plaintiffs allege that on June 19, 2009, the San Francisco Police Department and the California Department of Alcoholic Beverages Control unlawfully raided The Room under the pretext that it was not licensed to serve alcohol and do business in the basement area. *Id.* ¶ 28. During the raid, Defendants shut down The Room, confiscated dozens of bottles of alcohol and emptied their contents, and seized and destroyed musical and DJ equipment. *Id.* ¶ 29. Defendants also cited Mr. Quan with an infraction for serving poisonous beverages, which was later dismissed. *Id.* ¶ 30.

On June 19, 2009. Mr. Magallon was working as a bartender in the basement area of The Room. *Id.* ¶ 19. Plaintiffs allege that, during the June 19th raid, Defendants Bertrand, Ott and others unlawfully arrested Mr. Magallon under the pretext that he did not have an I.D. *Id.* ¶ 20. In the process of taking Mr. Magallon into custody, Defendants dragged him to another area of the bar and physically beat and assaulted him. *Id.* ¶ 21. Mr. Magallon was then placed in a patrol car outside the bar and transported to jail. *Id.* While inside the patrol car, an officer struck Mr. Magallon in the head. *Id.*

Plaintiffs allege that the June 19, 2009 raid on The Room was part of a larger pattern of racketeering activity by Defendants to intimidate and terrorize nightclub owners, party-goers, and party promoters in order to effectuate an unlawful result. *Id.* ¶¶ 15, 36-41.

Based on these allegations, on March 29, 2010, Plaintiffs filed their Complaint in state court asserting claims for: (1) assault and battery, wrongful arrest, and kidnapping (collectively, Count One);[1] (2) fraud by mail, unlawful interruption of business, abuse of police power, and destruction and theft of property (Count Two); and (3) violation of federal Racketeer Influenced and Corrupt Organizations law ("RICO"), 18 U.S.C. § 1962(c) (Count Three).[2] Dkt. No. 1., Ex. B. On April 28,

---

[1] Although Plaintiffs assert multiple claims, they group them into three counts.

[2] Count one is asserted by Mr. Magallon, Count Two is asserted by Mr. Magallon, and Count Three is asserted by both Plaintiffs.

2010, the City Defendants removed the action to this Court on the basis of federal question jurisdiction, citing Plaintiffs' federal RICO claim. Dkt. No. 1.

On September 16, 2010, the parties filed their Joint Case Management Statement and the Court issued the Case Management Scheduling Order the next day. Dkt. Nos. 15, 16. The deadline for discovery was set for March 15, 2011, and the dispositive motion deadline was set for April 14, 2011. Dkt. No. 16 at 3.

On December 1, 2010, Plaintiffs' former attorney, Mark Webb, filed a motion to withdraw as counsel, which the Court granted on December 21, 2010. Dkt. Nos. 22, 23. Plaintiffs thereafter proceeded *pro se* until April 7, 2011, at which time they filed a notice of substitution of counsel, indicating that they had retained the law firm of Lipton, Piper & Sganga, LLP, to represent them in this lawsuit. Dkt. No. 24.

Subsequently, on April 14, 2011, the State Defendants and the City Defendant each filed motions for summary judgment. Dkt. Nos. 40, 41.

In response, on April 19, 2011, Plaintiffs filed a Request seeking modification of the pretrial deadlines, including extensions of the expert disclosure and rebuttal deadlines, the discovery deadline, and setting a deadline to file a motion to amend their Complaint. Dkt. No. 44. The City Defendants opposed Plaintiffs' request, arguing that they would be unfairly prejudiced by the extensions because they had already timely disclosed their experts and expert reports and filed their motion for summary judgment, and because Plaintiffs' requested extensions ran up against the pre-trial filing deadlines. Dkt. No. 45. On April 21, 2011, the Court granted Plaintiffs' request to amend the pre-trial dates, vacated the noticed hearing date for the summary judgment motions, and vacated all other pretrial and trial dates except those specific in the order. Dkt. No. 46.

On May 9, 2011, Plaintiffs filed the instant Motion, seeking leave to file their proposed First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Dkt. No. 47; Dkt. No. 48-1, Declaration of Jonathan L. Piper, Ex. A (Porposed First Amended Complaint). The City Defendants and the State Defendants oppose Plaintiffs' request.

### III.  LEGAL STANDARD

3

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[3] The Ninth Circuit has construed this provision broadly, instructing that district courts should grant leave to amend a pleading with "extraordinary liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Nevertheless, the Supreme Court has recognized certain parameters to this rule. Specifically, a district court may properly deny leave to amend when there is "apparent or declared" evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . " *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). While courts may examine each of these factors, they are accorded varying weight. In particular, undue prejudice to the opposing party is the most important consideration. *Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). "Indicators of prejudice include a need to reopen discovery or the addition of claims or parties." *Greenfield v. Am. W. Airlines, Inc.*, 2004 WL 2600135, at *3 (N.D. Cal. Nov. 16, 2004) (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)). Evidence of delay, standing alone, is not dispositive, but is relevant when evaluating whether leave to amend is proper, especially when the moving party fails to present any reason for the delay. *See Lockheed Martin Corp.*, 194 F.3d at 986; *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1552-53 (9th Cir. 1994) (affirming denial of motion to amend filed three weeks before trial based on findings of "extreme and unexplained" delay and prejudice to the opposing party); *W. Shoshone Nat'l Council v. Moliini*, 951 F.2d 200, 204 (9th Cir. 1991) (affirming denial of motion to amend filed after summary judgment where there was no explanation for seeking to amend two and half years after the complaint was filed and defendant would be

---

[3] Here, because Defendants oppose Plaintiffs' request, Plaintiffs must obtain leave of Court before they may file their proposed First Amended Complaint.

4

1  prejudiced because additional discovery would need to be taken); *Morongo Band of Mission
2  Indians*, 893 F.2d at 1079 (affirming denial of leave to amend filed two years after case was filed
3  based in part on finding that the proposed claims "would have greatly altered the nature of the
4  litigation and would have required defendants to have undertaken, at a late hour, an entirely new
5  course of defense."). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors,
6  there exists a strong presumption under Rule 15(a) in favor of granting leave to amend." *Eminence*,
7  316 F.3d at 1052.

## IV.  DISCUSSION

### A.  Plaintiffs' Request

In their Motion, Plaintiffs seek leave to file their proposed First Amended Complaint, which adds allegations, drops certain claims asserted in their Complaint, asserts several new state and federal claims, and names Playbar, Inc. as a plaintiff.[4]  *See* Ex. A to Piper Decl., Dkt. No. 48-1. Based on the Court's review of the proposed First Amended Complaint, Plaintiffs seek to assert claims for: (1) false arrest and imprisonment; (2) negligent interference with prospective economic advantage; (3) intentional infliction of emotional distress; (4) assault and battery; (5) violation of California Civil Code section 52.1; (6) negligence; (7) negligent selection, training, retention, supervision, and investigation; (8) violation of Fourth, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (9) municipal liability pursuant to 42 U.S.C. § 1983 (*Monell* claim); and (10) conspiracy to violate civil rights and failure to prevent violations.

In support, Plaintiffs argue that amendment is necessary because of several developments. First, Plaintiffs contend that their prior counsel omitted "critical" civil rights allegations from their original Complaint and drafted a pleading that was not "appropriate" for this case.  Mot. at 5. Second – and somewhat related to Plaintiffs' first argument – Plaintiffs contend that "now that the case is in federal court, there are several civil rights allegations that should now be pled." *Id*.  Third,

---

[4] Although Plaintiffs have attached their proposed First Amended Complaint, Plaintiffs neglect to specify what new allegations and claims they are adding, leaving the Court with the responsibility of going line-by-line to compare the operative and proposed amended pleadings.

5

Plaintiffs submit that they "have learned of additional information that warrant[s] the addition of a *Monell* claim." *Id*. Finally, Plaintiffs explain that, at the time they filed the Complaint, the corporation that owns The Room was not named as a plaintiff, so it must be added because it is a real party in interest. *Id*. at 4.

**B.     The Defendants' Oppositions**

Both the City Defendants and the State Defendants oppose Plaintiffs' request on ground of delay, prejudice, and futility. The Court summarizes their challenges below.

1.     <u>The City Defendants' Objections</u>

The City Defendants first argue that Plaintiffs' proposed amended complaint contains vastly different allegations; deletes claims for fraud, kidnapping, and violation of federal RICO laws; adds multiple new claims; and adds a new plaintiff. City Opp'n at 1-5, 6. They assert that they organized their discovery based on the allegations and claims pled in Plaintiffs' current Complaint and that if Plaintiffs are permitted to file the amended pleading, much of their discovery will be rendered useless and they will be required to start discovery all over again in order to investigate the new claims. *Id*.

Second, the City Defendants argue that – in compliance with the dispositive motion deadline – they filed a motion for summary judgment supported by six declarations that was aimed at the allegations and claims in Plaintiffs' operative Complaint. *Id*. at 6-7. They contend that if the Court allows Plaintiffs to file their proposed amended complaint which changes and expands their allegations and asserts 10 new claims, they will have to completely rewrite their motion because their legal arguments and cited facts would no longer apply. *Id*. at 7-8.

Third, the City Defendants argue that because the proposed amended complaint seeks new remedies, including injunctive relief, and adds new claims that may entitle them to attorneys' fees, granting Plaintiffs leave to file the amended complaint would change the entire tenor of the case and force the City Defendants to adjust their litigation strategy, incur additional expenses, and subject the individual defendants to a second round of depositions and interrogatories. *Id*. at 8.

Finally, the City Defendants contend that Plaintiffs have failed to establish a reasonable basis

6

1  justifying their request for leave to file an amended complaint at this stage of the case. In particular,
2  the City Defendants argue that Plaintiffs have failed to identify any new facts or evidence that were
3  not known or discoverable earlier in the case. *Id*. at 9-10. The City Defendants point out that while
4  Plaintiffs contend that they have discovered "testimony about San Francisco's policies and practices,
5  related to nightclubs, and facts about who made the decision to carry out enforcement actions,"
6  Plaintiffs' original Complaint generally, and their RICO claim specifically centered on the issue of
7  who made the decision to carry out the enforcement action. *Id*. at 9. Further, the City Defendants
8  argue that no new depositions have been taken in this case since July 2010, so any facts were known
9  to Plaintiffs by that time and Plaintiffs have failed to provide any valid reason for delaying nine
10 months to seek to amend their Complaint. *Id*.

### 2. The State Defendants' Objections

The State Defendants urge the Court to deny Plaintiffs' request for leave to amend because it would unfairly prejudice them and because the proposed amendments are futile. State Opp'n, Dkt. No. 53. In support, the State Defendants argue that they have already invested significant time and resources in order to draft and file their pending motion for summary judgment. *Id*. at 4. They contend that if they prevail on their summary judgment motion, the new claims and relief Plaintiffs seek in their proposed amended complaint would necessarily fail because they are derivative of the issues currently briefed in their summary judgment motion. *Id*. Thus, the State Defendants argue that they "should not be forced to again expend the time, efforts, resources, and costs necessary to respond to a first amended complaint, which in essence only changes the style of the allegations and claims for relief, but not their substance." *Id*. at 2.

The State Defendants further contend that the Court should deny Plaintiffs' request because the proposed claims Plaintiffs seek to assert would be subject to dismissal because they fail as a matter of law. *Id*. at 5-10.

**C.  Analysis**

The Court has carefully considered the parties' arguments and finds that leave to amend at this juncture is inappropriate.

First, the Court agrees with Defendants that Plaintiffs unduly delayed in seeking leave to amend. As Plaintiffs acknowledge, the basic facts underlying their lawsuit have been known since the inception of this case. Plaintiffs have alleged that, despite the fact that The Room is properly licensed to operate the basement area of the bar, Defendants unlawfully raided and shut down the business and, in doing so, unlawfully arrested and imprisoned Mr. Magallon. The fact that a year into the case, Plaintiffs reassessed these facts and determined that the case is better cast as a civil rights case, rather than one centered on RICO violations and fraud, is insufficient to justify leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)) (holding that a court may properly deny a motion to amend "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

Plaintiffs' proffered explanations that a change in counsel and the discovery of facts concerning the City's policies and practices relating to nightclubs and enforcement decisions are unavailing. While Plaintiffs' current counsel may disagree with the pleading his predecessor drafted and filed on behalf of Plaintiffs, a change in representation does not excuse the delay of over a year in seeking to amend the Complaint. *See Ansan Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (rejecting argument that new counsel who discovered information giving rise to new claim was sufficient to justify leave to amend). Moreover, as Defendants point out, Plaintiffs had ample time and had taken sufficient discovery to enable them to assess the allegations and claims they were asserting against Defendants. Plaintiffs have failed to proffer any reasonable explanation for the nine-month delay between the time the last deposition was taken in July 2010 and the date they filed the instant motion in May 2011. If new facts came to light during the depositions, that was the proper time to seek to amend the Complaint.

Plaintiffs' representation that the removal of this action to federal court prompted them to assert new federal claims is equally unconvincing. Notwithstanding the fact that Plaintiffs asserted a *federal* RICO claim in their initial Complaint, Defendants removed this case to federal court in April 2010. At that point, Plaintiffs were in a position to decide whether they wanted to assert any

additional federal claims in light of the change in forum.

Second, in addition to Plaintiffs' undue delay in seeking to amend their pleading, Defendants have demonstrated that they would be severely prejudiced if the Court allowed Plaintiffs to amend their Complaint at this stage of the case. As Defendants point out in their Oppositions, they have litigated this case, including tailoring discovery and summary judgment motions, based on the allegations and claims asserted in the operative Complaint. The fact that Plaintiffs now seek to recast their claims would force Defendants to restructure their discovery and litigation strategy over a year into the case and would moot their summary judgment motions. In such circumstances, the Ninth Circuit has admonished litigants that "[a] motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991), *overruled on other grounds, Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 692-93 (9th Cir. 2001) (denying leave to amend in part because summary judgment motion was pending); *see also M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983). Rather, courts have repeatedly held that, "[t]he fact that a motion to amend is filed after substantial discovery and the filing of a motion for summary judgment 'weighs heavily against allowing leave.'" *Medimmune, Inc. v. Genentech, Inc.*, 2004 WL 5327194, at *2 (C.D. Cal. Feb. 18, 2004); *see also Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138-39 (9th Cir. 1998) (affirming denial of leave to amend to add new claim two weeks before discovery deadline because amendment would cause undue delay and prejudice the defendant); *Lee v. AFT-Yakima*, 2011 WL 2181808, at *12 (E.D. Wash. June 3, 2011) (denying motion to amend complaint filed after summary judgment motion because forcing defendants to file new summary judgment motions to address new allegations "would cause undue hardship and waste judicial resources"); *Mahone v. Pierce County*, 2011 WL 2009740, at *3 (W.D. Wash. May 23, 2011) (denying motion to amend filed after defendant moved for summary judgment because amendment would be futile).

Nevertheless, Plaintiffs maintain that Defendants will not suffer any prejudice because *Plaintiffs* are willing to stipulate to a continuation of the discovery deadlines. Plaintiffs, however, fail to recognize that extending the discovery deadlines neither allows Defendants to recoup the time

9

and resources they have spent litigating the case up to this point nor justifies returning Defendants to the initial pleading stage of the case after more than a year of litigation.  While the Court is mindful of its interest in providing Plaintiffs with an opportunity to fully litigate any claims they may have against Defendants, the prejudice to Defendants that would result from allowing Plaintiffs to overhaul their claims at the conclusion of the discovery period and after Defendants have moved for summary judgment is sufficient to deny leave under Rule 15 at this time.[5]  *See Foman*, 371 U.S. at 182.

## V.  CONCLUSION

Taking the foregoing factors into consideration, the Court finds that Plaintiffs' significant delay in seeking leave to amend and the substantial prejudice to Defendants that would result from allowing the amended pleading strongly militate against grating leave to amend.  Accordingly, the Court **DENIES** Plaintiffs' Motion for Leave to Amend (Dkt. No. 47).

Further, the Court **SETS** the deadline for Plaintiffs' oppositions to Defendants' motions for summary judgment for July 6, 2011, and the deadline for Defendants' reply briefs for July 13, 2011.  The Court will notify the parties of the hearing date for the motions.  Additionally, Defendants shall re-submit chambers copies of their motions and supporting materials.

**IT IS SO ORDERED.**

Dated: June 21, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

---

[5]  Consistent with defense counsel's suggestion during the hearing, should any of Plaintiffs' claims survive summary judgment, Plaintiffs may move to amend their Complaint at that point.

10